UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA

1:21CR00698-001

v.

ONYEWUCHI IBEH.
        Defendant.

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Pursuant to Section 6A1.2 of the *Federal Sentencing Guidelines* the defendant, ONYEWUCHI IBEH, comes now and submits the following:

**I.      Objections to Presentence Report**

Role in the Offense USSG § 3B1.1(a)

The defendant objects to the role in the offense enhancement pursuant to USSG § 3B1.1(a).   He denies recruiting others or directing their actions.   The defendant, like others involved, conducted the financial transactions involved in the offense at the direction of other unindicted co-conspirators.   Mr. Ibeh played a role no greater than the others and therefore the enhancement should not apply.

**II.     Sentencing Factors**

A sentencing court is required to consider the guidelines ranges, *see* 18 U.S.C.A 3553(a) (4)(Supp. 2004), but is permitted to tailor the sentence in light of other statutory concerns as well.  Specifically, 18 USC 3553(a) notes:

The court shall impose a sentence **sufficient, but not greater than necessary,** to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider—

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed—

    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)     to afford adequate deterrence to criminal conduct;

    (C)     to protect the public from further crimes of the defendant; and

    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for—

    (A)     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

    (B)     in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

(5)     any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

The Supreme Court has described the process for imposing a sentence under the advisory sentencing guidelines as follows:

[A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment

based on the facts presented.  If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance…[A] major departure should be supported by a more significant justification than a minor one.  After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States,* 128 S.Ct. 586, 596-97 (2007)(citations and footnote omitted; *see also Kimbrough v. United States*, 128 S.Ct. 558, 569-70 (2007).

### A. Advisory Sentencing Guidelines

This Honorable Court must consider the advisory sentencing guidelines.  The Supreme Court has held that when sentencing, a court must demonstrate that it "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). " "[A] perfunctory recitation of the defendant's arguments or the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decision making or provide an adequate basis for appellate review." *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (internal quotation marks omitted).Further, the district court must provide some individualized assessment "justifying the sentence imposed and rejection of arguments for a higher or lower sentence based on § 3553." *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010).  A district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why he has rejected those arguments. *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017); *Slappy*, 872 F.3d 202, 207 (4th Cir. 2017) (internal citation and quotation marks omitted).

An individualized assessment requires "that district courts consider the defendant's non-frivolous arguments for a downward departure, impose an individualized sentence based on the

characteristics of the defendant and the facts of the case, and explain the sentence chosen." *Id.* A "'sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority'" by articulating how the sentencing factors apply to the case before it. *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Rita*, 551 U.S. at 356).

### B.  § 3553(a) Sentencing Factors

In addition to considering the advisory sentencing range recommended under the federal sentencing guidelines, and statutory restrictions this Honorable Court must also consider the sentencing factors set forth in § 3553(a).  The defendant submits an application of these factors to the case at bar leads to the conclusion that a sentence within the advisory guideline range (151-188 months)[1] would be greater than necessary.

### 1.  History and Characteristics of The Defendant

The presentence investigative report summarizes Mr. Ibeh's background.   He is a criminal history category I.  There is nothing about his past that would suggest he is a danger or violent person.  His criminal history is devoid of any arrests for weapons, firearms, or crimes of violence.

Mr. Ibeh is 33 years old.   He is unmarried and has no children.   He was born in Hyattsville, Maryland to his parents.   His parents immigrated from Nigeria approximately 3 years before his birth.  He is a high school graduate and has resided in Prince George's County

---

[1] This assumes the defendant's objection to the enhancement pursuant to § 3B1.1(a) is over-ruled.  In the event the Court sustains the objection the resulting advisory guidelines range would be 108-135.

for his entire life.  He has a stable work history and has operated multiple businesses.  Although he did not earn a college degree, Mr. Ibeh has successfully completed some college level courses. There is no significant history of mental health issues or substance abuse.

Mr. Ibeh has a large extended family.  He also enjoys a significant network of supporters. As evidenced by the many letters of support filed in conjunction with this pleading, he is well thought of by those who know him best.  The defendant respectfully requests that this Honorable Court review each letter and include them in the record of this matter.

Mr. Ibeh's history and characteristics support the conclusion that a lengthy period of incarceration is simply unwarranted.  Nothing about his background suggests that he is a danger to society and therefore must be incapacitated.  He is not in need of educational, vocational, or substance abuse assistance.  The defendant urges this Honorable Court to afford these factor their proper weight in determining a just outcome in this matter.

## 2.  Nature of the Offense

The facts supporting the guilty verdicts in this matter are well known to the Court.  This matter was tried before a jury.   During the trial, the government adduced evidence of a conspiracy to commit wire fraud and money laundering.  In essences, companies operating in the United States were defrauded out of monies intended for vendors doing business with the target company.   These funds were deposited into bank accounts controlled by one or more of the charged defendants.

For his role, the government's evidence suggested that he assisted with transferring the ill-gotten funds from the original deposit account onto accounts maintained at financial

institutions outside the United States. There was no evidence that Mr. Ibeh played any role in the original deception to caused the funds to be secured from the target companies.  The evidence at trial further established that the vast majority of the funds ultimately end up in the hands of unindicted co-conspirators.  Mr. Ibeh received a small portion of the funds in exchange for his role.

### 3.  Need to Deter

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. *Id*. at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id*. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve

statistical significance." *Id*. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id*. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. *See* David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); see also Gabbay, supra, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

The defendant submits there is no legitimate reason to believe that a lengthy period of incarceration would provide any further deterrence to him.  The defendant fully appreciates the consequences of his convictions.   Most importantly, he understands his criminal convictions exposed him to the possibility of a very lengthy period of incarceration.  There is no evidence to support the need to impose a lengthy period of incarceration in order to deter him further.

Available data all support the conclusion that given Mr. Ibeh's (1) offense of conviction; (2) age; and (3) lack of criminal history all evidence the remote likelihood that Mr. Ibeh would



*Figure 1.*
**Demographic Characteristics of Recidivism Study Offenders**

| Race/Ethnicity | |
| --- | --- |
| White | 43.7% |
| Black | 33.9% |
| Hispanic | 17.8% |
| Other | 4.6% |

| Gender | |
| --- | --- |
| Male | 81.7% |
| Female | 18.4% |

| Education | |
| --- | --- |
| Less Than High School Graduate | 34.3% |
| High School Graduate | 36.9% |
| Some College | 21.4% |
| College Graduate | 7.5% |

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05. Of the 25,431 cases in this study, the Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

re-offend.[2]    https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

Mr. Ibeh stands convicted of a fraud offenses.    According to the USSC the rate of recidivism for such offenders is only 13.6%. *Id.*



Mr. Ibeh is a criminal history category I.  This places him among the lowest offenders likely to re-offend. *Id.*

### 4.    Need to Avoid Unwarranted Disparities

This Honorable Court must remain mindful of the need to avoid unwarranted disparities between similarly situated defendants.    The government advocates for a sentence within the advisory guideline range.    Such a sentence would be greater than necessary.    It would also be

---

more than 10 times any other sentence imposed to date on any other defendant charged with similar conduct.  The greatest sentence imposed thus far is 15 months.

Undoubtedly, the government will point out a distinction in the role of Mr. Ibeh verses others.  While not conceding there is a difference, any difference would not support such a 10 to 1 disparity between Mr. Ibeh and others.

### C.      Recommended Sentence

Mr. Ibeh submits a sentence of 24 months would satisfy the legitimate goals of sentencing.

### III.    Conclusion

Wherefore the defendant, **ONYEWUCHI IBEH**, respectfully requests that this Honorable Court sentence to a period of 24 months.

I ASK FOR THIS:

_____/s/_____
Robert L. Jenkins, Jr., Esq.
Virginia State Bar No.:  39161
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant ONYEWUCHI IBEH

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on December 13, 2022.

_____/s/_____
Robert L. Jenkins, Jr., Esq.
Virginia State Bar No.:  39161
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant ONYEWUCHI IBEH